UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TIMOTHY SHANE KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:25-CV-66-KAC-JEM |
| | ) |
| ANDERSON COUNTY DETENTION FACILITY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Timothy Shane King filed a pro se prisoner's civil rights Complaint under 42 U.S.C. § 1983 [Doc. 1] that is before the Court for screening in compliance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e) and 1915A. For the below reasons, the Cour permits a physical privacy claim against Anderson County to proceed and dismisses all remaining claims and Defendants.

**I.     PLRA SCREENING STANDARD**

Under the PLRA, a district court must screen a prisoner complaint and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in [Federal] Rule [of Civil Procedure] 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). To withstand PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 570). Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim. *Id.* at 681. Similarly, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. The Supreme Court has instructed that a district court should liberally construe pro se pleadings filed in a civil rights case and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II. COMPLAINT ALLEGATIONS

On January 6, 2025[1], Plaintiff asked Deputy Nickel "how to get [his] specific religious [B]ible" at the Anderson County Detention Facility ("ACDF") and was told "that if the [B]ible was not on the [l]ibrary [c]art," Plaintiff could not have it [Doc. 1 at 3-4]. Plaintiff filed a grievance about the incident on January 8, 2025, and on January 11, 2025, Sergeant Minor answered the grievance "the same way" [*Id.* at 4]. Plaintiff appealed the grievance, and the grievance response stated that "it was a fire hazard" under "t.c.i."[2] standards [*Id.*].

On May 2, 2024, Plaintiff filed a grievance because he could not obtain a list of his medications from "Northeast Prison[,]" where he was housed for four months before he was sent to ACDF [*Id.*]. Staff told Plaintiff that Northeast Prison refused to fax the list to them, but Plaintiff believes they said that "so they could charge [him] for re-evaluation" [*Id.*].

Mental health staff refuse to talk to Plaintiff privately about his personal issues [*Id.*]. Medical staff purportedly do not allow inmates to speak to them privately either [*Id.* at 5]. Medical staff have lied to Plaintiff about contacting other institutions to obtain a list of his prior medications

---

[1] Plaintiff states that this incident occurred on "1-6-2024," but because he later states that he has only been at the facility since February 14, 2024, [Doc. 1 at 5], the Court presumes that the year stated is incorrect.

[2] In context, this appears to be a reference to the "Tennessee Corrections Institute." *See* https://www.tn.gov/tci.html (last visited November 7, 2025).

[*Id.*].  ACDF sent Plaintiff to Moccasin Bend Mental Health for an evaluation, and once there, Plaintiff's medications were changed "to a simple blood pressure pill" [*Id.*].  But the ACDF stated that Moccasin Bend did not have Plaintiff "on any medication" [*Id.*].  Plaintiff's blood pressure "goes high sometimes[,]" but staff at the ACDF refuse to give him medication to lower it [*Id.*].

On February 2, 2025, Plaintiff grieved that the entire front wall of his housing unit is a window and "females do not announce their presence upon arrival" [*Id.* at 4].  Thus, if Plaintiff is "in the process of standing up from using the restroom," females can see his "private parts" [*Id.*].  Immediately after he filed a grievance about these conditions, Plaintiff was moved to "the hole" "for whatever reason" [*Id.*].

Plaintiff alleges that staff are "disrespectful, rude, and unprofessional" [*Id.* at 5].  Deputies do not seal Plaintiff's mail in his presence, and his mail is sometimes three months late to arrive at its destination, if it arrives at all [*Id.*].  Once, Plaintiff filed "a title 6 form" and asked to use "a private phone line to verify [that] the form was delivered[,]" but staff refused to provide him a "secure line" to call the Department of Justice [*Id.*].

Plaintiff filed his Complaint against the ACDF, Southern Health Partners ("SHP"), Sergeant Minor, and "several other deput[ies]" [*Id.* at 1, 3] seeking "justice to be served on the grounds of discrimination" and $5 million in damages "to cover the pain and suffering" [*Id.* at 7].

### III. ANALYSIS

To state a claim under Section 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  Plaintiff does not identify his custodial status in his Complaint, [*see* Doc. 1], but he is not listed as an active inmate in the custody of the Tennessee Department of Correction, *see* Tenn. Dep't of Corr., *Felony Offender*

3

*Information*, https://www.tn.gov/correction/agency-services/foil.html (last visited November 7, 2025). Therefore, it appears that he is a pretrial detainee and was a pretrial detainee at the relevant time. A pretrial detainee is protected by the Fourteenth Amendment to the United States Constitution. *See Westmoreland v. Butler Cnty.*, 29 F.4th 721, 727 (6th Cir. 2022).[3]

### A. Access To A "Specific" Bible

Plaintiff maintains that staff at ACDF refused "to get [his] specific religious [B]ible" [*Id.* at 3-4]. "The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law. . . prohibiting the free exercise' of religion.'" *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021). "When a prison policy singles out and substantially burdens a prisoner's sincere beliefs, the First Amendment requires us to ask whether the policy serves a valid penological interest." *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 460-61 (6th Cir. 2019) (citations omitted). "If it does not, the inquiry ends, and the prisoner prevails." *Id.* "But if a regulation serves a penological interest, we must balance (1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy alternatives' exist that suggest 'the regulation is not reasonable.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

Here, Plaintiff requested a "specific religious [B]ible," but the facility denied his request because the specific Bible he requested presented a fire hazard. ACDF has a penological interest in preventing fires in its facilities. And Plaintiff does not present any evidence that this stated penological interest was anything less than sincere. Based on this record, balancing the relevant

---

[3] If Plaintiff were an inmate at the relevant time, where a claim fails to meet the Fourteenth Amendment standard, it generally also fails under "the more demanding Eighth Amendment standard[.]" *See Morgan ex. rel Morgan v. Wayne Cnty.*, 33 F.4th 320, 326 (6th Cir. 2022).

4

considerations, ACDF's significant interest in preventing a fire weighs heavy against Plaintiff's request for access to a specific Bible. There is no evidence that Plaintiff was left without alternative avenues for exercising his religion or that he could not access other Bibles relevant to his chosen faith that did not present the same potential fire hazard. Accordingly, on this precise record, his allegations fail to state a plausible constitutional violation. And the Court **DISMISSES** this claim.

      **B.**      **Medications**

Plaintiff alleges that ACDF and/or SHP staff (1) refused to contact other facilities to obtain a list of his medications so that they could charge him for further evaluation and (2) refused to administer to Plaintiff the blood pressure medication he was placed on previously at Moccasin Bend [Doc. 1 at 4, 5]. These allegations implicate Plaintiff's right to medical treatment.

To state a claim for the denial of adequate medical care, Plaintiff must show that (1) he had a sufficiently serious medical need and (2) that the defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty.,* 60 F.4th 305, 317 (6th Cir. 2023) (citation and quotation omitted). A medical need is sufficiently serious if it has been diagnosed by a doctor as requiring treatment or is so obvious that even a lay person would recognize the need for medical attention. *See Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022).

Plaintiff's allegations fall short of establishing a constitutional violation. Plaintiff does not allege that he has been denied medical evaluation or treatment at ACDF. Instead, he complains that he is not on the same medications that he was on previously. Staff at SHP and ACDF are under no constitutional obligation to follow a previous treatment plan, provided that the staff member's own treatment plan is selected as a matter of reasonable, professional medical judgment.

5

*See Lloyd v. Moats*, 721 F. App'x 490, 495 (7th Cir. 2017) (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (finding that "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise independent medical judgment" (citation omitted)). Plaintiff does complain that sometimes his blood pressure is high. But that alone is not enough to make an inadequate medical care claim. The law requires more. Accordingly, the Court **DISMISSES** this claim.

  C. **Medical And Mental Health Privacy**

Plaintiff next complains that he is unable to speak with medical or mental health personnel privately [Doc. 1 at 4, 5]. But "prisoners have no constitutional right to nondisclosure of private information." *Ward v. Samuel*, No. 5:12-cv-14298, 2013 WL 249683, *3 (E.D. Mich. Jan. 23, 2013) (citing *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994)); *see also Shepherd v. Sheldon*, No. 1:11-cv-127, 2011 WL 2971965 (N.D. Ohio July 21, 2011) ("[I]n the Sixth Circuit the release of medical records does not implicate a fundamental right." (collecting cases))). And Plaintiff does not identify any specific informational privacy interest that would fall within the protection of the Constitution. *See, e.g.*, *Pitchford v. Metro Nashville Police Dep't*, No. 3:19-cv-256, 2021 WL 2474461, at *3 (M.D. Tenn. June 17, 2021). So, the Court **DISMISSES** this claim for failure to state a claim upon which relief may be granted.

  D. **Rude, Disrespectful, and Unprofessional Treatment**

Plaintiff generally complains that staff are rude, disrespectful, and unprofessional [Doc. 1 at 5]. But without more, prisoners are not constitutionally protected from rude, insulting, or harassing treatment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (finding verbal abuse and harassment do not constitute "punishment" in the constitutional sense or otherwise raise a

6

constitutional issue); *see also Faulkner v. Davidson Cnty. Sheriff's Off.*, No. 3:14-mc-740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) ("Allegations of threats and verbal abuse do not state cognizable claims under § 1983."). Accordingly, the Court **DISMISSES** this claim.

      E.      **Private Secure Phone Line**

Plaintiff complains that he was denied access to a secure telephone line to contact the Department of Justice [Doc. 1 at 5]. Prison inmates generally have no reasonable expectation of privacy. *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). Therefore, a prisoner has no concomitant right to a secure telephone to call the Department of Justice, which did not represent Plaintiff. *See United States v. Adams*, 321 F. App'x 449, 462 (6th Cir. 2009) (finding inmate had no reasonable expectation of privacy in out-going telephone call); *Smith v. Bradley*, No. 94-5351, 1995 WL 241996, at *4 (6th Cir. April 25, 1995) ("If security concerns can justify strip and body-cavity searches, and wholly random cell searches, then surely it is reasonable to monitor prisoners' telephone conversations[.]" (citing *United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987))). Accordingly, these allegations fail to state a claim upon which relief may be granted, and the Court **DISMISSES** this claim.

      F.      **Mail Claims**

Plaintiff contends that his outgoing mail is not sealed in his presence and that it sometimes is months late to its destination, if it arrives at all [Doc. 1 at 5]. Plaintiff does not indicate whether this occurs with legal mail, nonlegal mail, or both. To his benefit, the Court presumes Plaintiff's allegations are equally applicable to his legal and non-legal mail.

Prisoners have a First Amendment right to send and receive mail, but that right may be subject to restrictions reasonably related to security or other legitimate penological objectives. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012

7

(6th Cir. 1992)). And it is well settled that prison officials do not violate a prisoner's First Amendment rights by reading his outgoing non-legal mail. *See Stow v. Grimaldi*, 993 F.2d 1002, 1004-05 (1st Cir. 1993) (holding state prison practice requiring that non-privileged outgoing mail be submitted for inspection in unsealed envelopes did not violate prisoner's constitutional rights); *Altizer v. Deeds*, 191 F.3d 540 (4th Cir.1999) (opening and inspecting inmate's outgoing mail is reasonably related to legitimate penological interests and does not violate the First Amendment); *Meadows v. Hopkins*, 713 F.2d 206, 208 (6th Cir. 1983) (upholding federal policy authorizing inspection of all incoming and outgoing non-legal mail from prisoners); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir.1986) (upholding prison regulations authorizing the inspection of incoming and outgoing nonlegal mail). Therefore, the Court **DISMISSES** any claim related to Plaintiff's non-legal mail.

And even if the outgoing mail at issue is legal mail, prison officials can open "legal mail" and inspect it for contraband. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). A prisoner may request to be present during an inspection. *See Sallier*, 343 F.3d at 874. Plaintiff has not alleged any facts from which the Court could plausibly infer that prison officials are violating Plaintiff's rights in this regard. Accordingly, the Court **DISMISSES** any claim related to sealing legal mail.

Additionally, to the extent Plaintiff's allegations suggest that ACDF officials are refusing to send his legal mail, it could implicate Plaintiff's right to access the courts. But to maintain a claim on this theory, Plaintiff must show that he was prevented from pursing a legal claim or that he lost the ability to pursue some relief due to Defendants' conduct. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding inmate claiming lack of access must demonstrate his prison officials impeded non-frivolous civil rights or criminal action); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without

any showing of prejudice to his litigation."). This the Complaint does not do. So the Court **DISMISSES** any potential access-to-court claim based on the mail.

G.  **Retaliation For Grievance**

Plaintiff asserts that after he filed a grievance complaining of the windowed wall in his unit, he was moved to "the hole" "for whatever reason" [Doc. 1 at 4]. Liberally construing these allegations, the Court considers whether Plaintiff has stated a plausible retaliation claim.

To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The filing of non-frivolous grievances is protected conduct. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). And "restricting a prisoner's housing by placing [him] in administrative segregation constitutes an adverse action." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (citations omitted). But Plaintiff does not set forth any facts that would permit the Court to plausibly infer that his grievance motivated the adverse action or that any named Defendant was responsible for the adverse action. Specifically, Plaintiff has not identified the person responsible for ordering that he be placed in solitary confinement, nor has he stated any facts suggesting that this unidentified individual even knew Plaintiff had filed a grievance. Therefore, even liberally construed, the Complaint does not state a retaliation claim on this basis. So, the Court **DISMISSES** any intended claim.

H.  **Physical Privacy**

Finally, Plaintiff alleges that his right to physical privacy was violated by a wall of glass windows that allows females to view his private parts after he uses the toilet [Doc. 1 at 4].

9

Prisoners generally maintain no right to privacy in their cells. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security."). But the Sixth Circuit has recognized a limited right to physical privacy under the Fourth Amendment where a prisoner is forced to expose himself to a member of the opposite sex. *See, e.g., Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004) (recognizing that "a prison policy forcing prisoners . . . to be exposed to regular surveillance by officers of the opposite sex while naked–for example while in the shower or using a toilet in a cell–would provide the basis of a claim on which relief could be granted"). Therefore, the allegations of the Complaint contain enough facts to state a viable claim for relief.

But against whom does that claim lie? Remember that Plaintiff named ACDF, the SHP, Sergeant Minor, and "several other deput[ie]s" as Defendants [Doc. 1 at 1, 3]. To state a claim against an individual Defendant in his or her respective personal capacity, the Complaint must adequately plead that each Defendant, by his or her own acts, violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This, the Complaint does not do.

This leaves Defendants ACDF and SHP. ACDF is a building, not a "person" subject to suit under Section 1983. *See, e.g., Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997). Anderson County, however, is a suable entity, and it is responsible for constitutional harms stemming from "implementation of [its] official policies or

established customs[.]" *See Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 708 (1978) (Powell, J., concurring). SHP is also a suable entity, but there are no facts from which the Court could plausibly infer that SHP, the medical provider at ACDF, has any control over the walls and windows at ACDF. So, the Court liberally construes Plaintiff's claim as one against Anderson County, which inferably sets official policies and customs related to housing inmates at ACDF.[4] Accordingly, Plaintiff may **PROCEED** only on his physical privacy claim against Anderson County. The Clerk **SHALL** add Anderson County as a Defendant in this action.

## IV. CONCLUSION

For the above reasons,

1. The Court **DIRECTED** the Clerk to add Anderson County as a Defendant;

2. Plaintiff has set forth a plausible claim that Defendant Anderson County violated his physical privacy rights, and this discrete claim may **PROCEED**;

3. The Clerk **SHALL** send Plaintiff a service packet (a blank summons and USM 285 form) for Anderson County;

4. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Order;

5. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

6. The Court **WARNS** Plaintiff that if he fails to timely return the completed service packet, the Court will dismiss this action;

7. Defendant **SHALL** answer or otherwise respond to the Complaint within twenty-one (21) days from the date of service. If Defendant fails to timely respond to the Complaint, it may result in entry of judgment by default; and

8. The Court **DISMISSED** all other claims and Defendants.

---

[4] The Sheriff of Anderson County is responsible for the ACDF. *See* Tenn. Code Ann. § 41-4-101. But suit against the Sheriff in his official capacity is the equivalent of suit against the County itself. *See Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). Therefore, to avoid redundancy, the Court construes this allegation against only the County.

Plaintiff **MUST** immediately inform the Court and Defendant or its counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge
